IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THOMAS LANDELL DAVIDSON,　§
　　　　　　　　　　　　　　§
　　　　　　　Plaintiff,　　　　§
　　　　　　　　　　　　　　§
VS.　　　　　　　　　　　　§　　Civil Action No. 3:17-CV-0006-D
　　　　　　　　　　　　　　§
AT&T MOBILITY, LLC;　　　　§
CITY OF DALLAS, TEXAS; and　§
ALAN JARVIS, Individually,　　§
　　　　　　　　　　　　　　§
　　　　　　　Defendants.　　　§

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Thomas Landell Davidson ("Davidson") asserting claims

under 42 U.S.C. § 1983 and Texas tort law, defendants AT&T Mobility ("AT&T") and the

City of Dallas, Texas ("the City") move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure

to state a claim on which relief can be granted, and defendant Alan Jarvis ("Jarvis") moves

under Rule 12(b)(6) to dismiss all state-law claims against him. For the reasons that follow,

the court grants AT&T's and the City's motions to dismiss, denies Jarvis' motion to dismiss,

and grants Davidson leave to replead.

I

The following facts are taken from Davidson's first amended complaint ("amended

complaint"), which the court accepts as true for the purposes of deciding the defendants'

motions to dismiss.[1]

Davidson, a Florida resident, visited Dallas in January 2015. Before he returned to Florida, he stopped at an AT&T store to purchase cell phones for his family. Davidson told a store attendant that AT&T had pre-approved him for a family plan, and that AT&T had told him that he needed a cash deposit when purchasing phones for the plan. The store attendant assisted Davidson in selecting three phones.

When Davidson attempted to pay for the phones in cash, an AT&T manager told him that, due to the value of the three phones, this particular store required a major credit card for the purchase. AT&T's cashier subsequently told Davidson that he could still purchase a single phone with cash. But when Davidson attempted to change his order to a single phone, the AT&T manager informed him that he could not purchase any phones for cash because he had originally requested three phones.

Hearing this, Davidson attempted to question why he was now unable to purchase any phone. At this point, Jarvis—an off-duty City of Dallas policy officer working as a security officer for the mall's landlord—approached Davidson. He yelled at Davidson to "get the hell out" of the store. Although no one else had requested that Davidson leave the store, he

---

[1]In deciding defendants' Rule 12(b)(6) motions, the court construes Davidson's amended complaint in the light most favorable to him, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Davidson's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

agreed to do so.

Davidson began walking to the exit. As he did so, Jarvis grabbed his arm and pushed him to the door. Davidson asked Jarvis not to touch him, considering that he was complying with the request to leave. Jarvis again pushed Davidson as he exited the store. At this point, the incident devolved into more physical violence:

> When Davidson turned to face Defendant Jarvis, Jarvis had his fist balled up and proceeded to strike Davidson. Davidson stopped the punch by Jarvis as Jarvis continued to push Davidson out the store and into wall. While Davidson struggled against the unnecessary and unexpected beating, other persons joined in to take Davidson to the ground and hold his legs. While on the ground, Defendant Jarvis began choking Davidson as two other men held Davidson's feet.

Am. Compl. ¶4. As the assault continued, Davidson told Jarvis that he was unable to breathe. When Jarvis did not stop, Davidson attempted to free himself. He also attempted to record the encounter with his cell phone. Both attempts were unsuccessful. Jarvis proceeded to use his taser on Davidson's neck and back several times. Davidson was then arrested and charged with aggravated assault on a public servant, assault on a public servant, and criminal trespass. All charges were eventually dismissed.

Davidson now brings the following claims: against the City[2] and Jarvis a claim under

---

[2]In the amended complaint, Davidson entitles his first claim for relief (under 42 U.S.C. § 1983) as a claim against, *inter alia*, the Dallas Police Department. *See* Am. Compl. at 5 (caption preceding ¶ 15). It is clear elsewhere in the amended complaint, however, that this is intended to be a claim against the City. As this court has frequently noted, the Dallas Police Department cannot be held liable because it lacks a separate jural existence. *See Funches v. City of Dallas*, No. 3:99-CV-0224-D, slip op. at 2 (N.D. Tex. Apr. 27, 1999) (Fitzwater, J.) (holding that DPD cannot be held liable because it lacks separate jural

42 U.S.C. § 1983 for excessive force, seizure, and false arrest and/or false imprisonment; against AT&T and Jarvis Texas-law claims for false arrest and false imprisonment, intentional infliction of emotional distress,[3] and assault and battery; and against AT&T a claim for negligence.  In separate motions, the City and AT&T move to dismiss all claims against them, and Jarvis moves to dismiss all state-law claims against him under Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f).  Davidson opposes all three motions.

## II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin F. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a motion to dismiss, Davidson must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

---

existence) (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991)).

[3]Davidson refers to this claim in some instances as one for intentional infliction of emotional *duress*. *See, e.g.,* Am. Compl. ¶ 31.  The court will refer to it as it is commonly known and as Davidson otherwise refers to it.

unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court first considers Davidson's municipal liability claims against the City under § 1983.

A

A municipality is a "person" subject to suit under § 1983 under certain circumstances.  *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).  Although a municipality cannot be held liable simply on a theory of *respondeat superior*, *id.* at 691, it can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).  Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a

constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (internal quotation marks omitted).

The first element requires that Davidson adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Id.* at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a [policymaker] may, under certain circumstances, constitute a policy for which a municipality may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is the final policymaker." *Id.* (citations, brackets and some internal quotation marks omitted). A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, Davidson must adequately plead the identity of a policy maker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "A 'policymaker' must be one who takes the place of a governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d

762, 769 (5th Cir. 1984) (en banc)). "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals . . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental[.] . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that Davidson adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted). Davidson therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411) (internal quotation marks omitted); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was

promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Brown*, 520 U.S. at 407)). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

The City moves to dismiss Davidson's § 1983-based claims on the grounds that Davidson has failed to demonstrate the existence of a city policy, and that the amended complaint's limited factual allegations do not amount to deliberate indifference or demonstrate a casual link to the violation of Davidson's constitutional rights. Davidson contends that he has sufficiently pleaded all three requirements for municipal liability.

B

"'Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy.'" *Pogue v. City of Dallas,* 2014 WL 3844675, at *3 (N.D. Tex. Aug. 4, 2014) (Boyle, J.) (quoting *Piotrowski*, 237 F.3d at 579). A plaintiff's allegations regarding the policy or custom cannot be conclusory, and they must contain specific facts showing the existence of such a custom. *Spiller of City of Texas City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)). "A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority." *Renfro v. City of Kaufman*, 27 F.Supp.2d 715, 717 (N.D. Tex. 1998) (Fish, J.) (citing *Worsham v. City of Pasadena*, 881 F.2d 1336,1339-40 (5th Cir. 1989)). "'Boiler plate

allegations of municipal policy, entirely lacking in any factual support that a municipal policy does exist, are insufficient.'" *Crow v. Cash Special Util. Dist.*, 2005 WL 1126826, at *2 (N.D. Tex. May 11, 2005) (Sanders, J.) (quoting *Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 736 (7th Cir. 1994) (superseded by statute on other grounds)).

C

Davidson first maintains that the City is liable for Jarvis' conduct because the Dallas Police Department ("DPD") has a custom of using excessive force and executing unlawful seizures. He alleges:

> Defendant City is liable because it sanctioned the custom, practice, and/or policy of illegal seizures, excessive force and/or violating [citizens'] rights to be free of unwanton seizure. [Jarvis'] actions were a customary practice and/or policy or procedure that was sanctioned by Defendant City out of which deprived Davidson of his civil rights by statute and by both Texas and United States Constitutions. Liability for Defendant City is established under §1983 because the assault, beating, and severe injury to citizens, with little or no justification, is a persistent, widespread practice of city employees — namely police officers — that, although not authorized by officially adopted policy, is so common and well settled as to constituted a custom that fairly represents official municipal policy.

Am. Compl. ¶23. Davidson also avers that the City's "active knowledge" of "numerous prior incidents of police officers beating citizens" and executing unlawful seizures demonstrates that City policymakers have acceded and are deliberately indifferent to the high risk of subsequent constitutional violations. *Id.*

This section of Davidson's amended complaint is essentially a conclusory assertion: that the City's policies, customs, and practices regarding the training of its law enforcement

officers resulted in the violation of Davidson's Fourth Amendment rights against the use of excessive force and unreasonable seizures. Aside from conclusory assertions about the existence of a policy or custom, Davidson has only alleged a single specific incident where a Dallas police officer violated an individual's Fourth Amendment rights: the incident involving Davidson that is at issue in this lawsuit. Otherwise, Davidson relies totally on boilerplate and conclusory language to assert that the use of excessive force and unlawful seizures are "persistent, widespread practice[s] among Dallas police officers." *Id.* Such allegations do not amount to facts from which one could draw a reasonable inference of a city policy. *See Linicomn v. City of Dallas,* 2015 WL 5664265, at *4 (N.D. Tex. Sept. 25, 2015) (Fitzwater, J.) (holding that "conclusory and boilerplate allegations" regarding city policy entitled city to judgment on the pleadings), *appeal docketed*, No. 17-10101 (5th Cir. Jan. 27, 2017); *Allen v. Burnett*, 2013 WL 2151218, at *3 (N.D. Tex. May 17, 2013) (O'Connor, J.) ("A single incident does not show a policy or custom.") (citing *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753-54 (5th Cir. 2009)); *Davenport v. City of Garland, Tex.*, 2010 WL 1779620, at *2-3 (N.D. Tex. Apr. 9, 2010) (Stickney, J.) (recommending granting motion to dismiss for no policy when plaintiff alleged only that "the use of excessive force . . . is so common and well known . . . that it constitutes a custom that fairly represents official policy"), *rec. adopted*, 2010 WL 1779619 (N.D. Tex. Apr. 30, 2010) (Boyle, J.); *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) ("Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability."). Indeed, "[i]t is the

conclusory nature of [Davidson's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Iqbal*, 556 U.S. at 681.

Similarly, Davidson identifies no policymaker responsible for the alleged city policy. Instead, he vaguely asserts that "the City's policy[]makers" acquiesce to the police officers' customary violations of Fourth Amendment rights. Again, this fails to rise above formulaic "labels and conclusions" that alone are insufficient to state a claim under Rule 8(a). *Cf. Flanagan v. City of Dallas*, 48 F.Supp.3d 941, 950-52 (N.D. Tex. 2014) (Lynn, J.) (holding that plaintiff stated claim when pleading that city councilman confirmed policymaking authority was delegated to police chief).[4]

Davidson contends that boilerplate allegations of policy are sufficient for a *Monell* claim to survive a motion to dismiss. He maintains that to require more would be to mandate a particularized pleading standard for such claims, which the Supreme Court rejected in *Leatherman v. Tarrant County, Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166-67 (1993). In *Leatherman* the Court rejected heightened pleading requirements for § 1983 claims, finding them to be "impossible to square . . . with the liberal system of 'notice pleading' set up by [Rule 8(a)]." *Id.* at 168 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)).

---

[4]Because Davidson fails to allege facts regarding a policymaker, he is also foreclosed from relying on the "extremely narrow" single incident exception to plead a municipal policy. *See Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (citing *Bolton*, 541 F.3d at 548 ("A single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable. However, this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker.")).

Davidson thus posits that to reject the allegations of his amended complaint would be to hold him impermissibly to a heightened pleading standard. The court disagrees.

*Leatherman* must be understood through the prism of *Twombly* and *Iqbal*:

> This Court can agree that the main point of *Leatherman* survived *Twombly* in that *Monell* pleadings are evaluated under Rule 8(a). But *Twombly* announced new law, altering the interpretation of Rule 8(a)—a new interpretation that applied, going forward, to every case that would have previously permitted formulaic or boilerplate pleadings.

*Gonzales v. Nueces Cnty., Tex.*, 227 F.Supp.3d 698, 704 (S.D. Tex. 2017). Under *Leatherman*, a court cannot impose a heightened pleading standard that exceeds the requirements of Rule 8(a). But under *Twombly* and *Iqbal*, to satisfy Rule 8(a), that is, "to state a claim of relief that is plausible on its face," a plaintiff must meet the pleading requirements that *Twombly* and *Iqbal* prescribe. *See supra* § II. Here, the amended complaint's boilerplate and conclusory allegations of a policy and of the existence of a policymaker, in addition to the allegations of a single incident, are insufficient to enable the court to draw the reasonable inference that there was a city policy. Accordingly, the court dismisses Davidson's § 1983 claims against the City based on Jarvis' alleged use of excessive force and unlawful seizure.

## D

Davidson separately contends that the City is liable under § 1983 for false arrest and/or false imprisonment. In his amended complaint, however, Davidson does not provide even boilerplate language alleging a city policy of making false arrests or falsely imprisoning

persons. To the extent that Davidson intends his allegations of a policy of excessive force and unlawful seizure to apply to his claim under § 1983 for false arrest and/or false imprisonment, the deficiencies the court identified *supra* in § III(C) apply here as well. For these reasons the court dismisses Davidson's § 1983 claim against the City based on Jarvis' alleged false arrest and/or false imprisonment of Davidson.

E

Davidson also alleges that the City is liable under § 1983 based on a theory of failure to train.

1

Failure to train is a separate theory of municipal liability or government official liability, *see, e.g.*, *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010), but the same standard applies both to a failure to train claim and to a municipal policy or custom claim, *see, e.g.*, *Valle*, 613 F.3d at 544 (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). To plead a plausible claim, Davidson must allege facts that enable the court to draw the reasonable inference that "(1) the training procedures were inadequate; (2) the city's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [Davidson's] injury." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (citing *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000)). "Deliberate indifference" is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing of simple or even heightened negligence will not suffice." *Valle*, 613 F.3d at 542,

547. "[T]o satisfy the second prong and prove that the municipality acted with deliberate indifference, the plaintiff must generally 'show a pattern of violations and that the inadequate training or supervision was obvious and obviously likely to result in a constitutional violation.'" *Byers v. Navarro Cnty.*, 2012 WL 677203, at *16 n.39 (N.D. Tex. Mar. 1, 2012) (Fitzwater, C.J.) (quoting *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010)) (emphasis, internal quotation marks, and brackets omitted).

2

Davidson alleges that "[l]iability attaches to Defendant City because the City's failure to train amounts to deliberate indifference to the rights of the persons with whom the police come into contact." Am. Compl. ¶24. He also asserts that "the training program in relation to the tasks the particular officer must perform is inadequate . . . [because] the program fails to teach new police persons that beating citizens violates citizens' constitutional rights." *Id.* Davidson therefore avers that "the deficiency in training actually caused Defendant to violate Davidson's constitutional rights." *Id.*

This basis for pleading municipal liability suffers from the same defects as do Davidson's other grounds for pleading for municipal liability. "The alleged facts are nothing more than conclusory statements that the training was . . . 'inadequate.'" *Arevalo v. City of Farmers Branch, Tex.*, 2017 WL 1153230, at *12 (N.D. Tex. Mar. 28, 2017) (Fitzwater, J.). As with Davidson's previous basis for pleading municipal liability, Davidson alleges no details about "a pattern of similar constitutional violations by untrained employees" as required to demonstrate deliberate indifference. *See Porter v. Epps*, 659 F.3d 440, 447 (5th

Cir. 2011); *see also Huff v. Refugio Cnty. Sheriff's Dep't*, 2013 WL 5574901, at *6 (S.D. Tex. 2013) (Costa, J.) (dismissing failure to train claim because plaintiff made no allegation of similar violations by untrained officials). Accordingly, the court dismisses Davidson's § 1983-based claims against the City to the extent he attempts to predicate municipal liability on a theory of failure to train.

IV

The court now turns to Jarvis' motion to dismiss Davidson's state tort claims pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) (West 2018).

A

Section 101.106(f) states:

> [i]f a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under [the Texas Tort Claims Act] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

*Id*. To obtain a dismissal under § 101.106(f), a defendant must show that the plaintiff's suit "(1) was based on conduct within the general scope of the defendant's employment with a governmental unit and (2) could have been brought against the government unit under the [Texas] Tort Claims Act." *Anderson v. Bessman*, 365 S.W.3d 119, 124 (Tex. App. 2011, no pet.); *see also Kelemen v. Elliott*, 260 S.W.3d 518, 524 (Tex. App. 2008, no pet.); *Zahn v.*

- 15 -

*Solano*, 2012 WL 13027085, at *1 (N.D. Tex. May 29, 2012) (Means, J.). The first prong of the test involves two inquires: "whether the individual defendant was an employee of a governmental unit and whether the acts alleged fall within the scope of that employment at the relevant time." *Anderson*, 365 S.W.3d at 124 (citing *Poland v. Willerson*, 2008 WL 660334, at *4 (Tex. App. Mar. 13, 2008, pet. denied) (mem. op.)).

B

Jarvis maintains that § 101.106(f) bars Davidson from pursuing his state tort claims. He contends that under the factual allegations of the amended complaint, Jarvis is alleged to have been an employee the DPD, a governmental unit; that the amended complaint alleges that Jarvis' conduct occurred within the scope of his employment as a police officer; and that the state tort claims could have been brought against the City, as the Supreme Court of Texas has interpreted that phrase. Jarvis therefore posits that, because § 101.106(f) applies and Davidson failed to amend his pleading within 30 days to name the governmental unit as the defendant, his state tort claims must be dismissed.

Davidson admits that Jarvis was an employee of a government unit during the alleged offense. He maintains, however, that whether Jarvis was acting within the scope of his employment as a police officer is a disputed factual issue, and that § 101.106(f) is otherwise inapplicable and/or unconstitutional.

C

The court considers first whether the amended complaint alleges that Jarvis was

engaged in conduct within the general scope of his employment as a police officer of the City.

1

The Texas Torts Claims Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by a competent authority." Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5). Texas peace officers retain "their status as peace officers twenty-four hours a day." *Blackwell v. Harris Cnty.*, 909 S.W.2d 135, 139 (Tex. App. 1995, writ denied). As a result, the "scope of employment is not determined simply on the basis of whether an officer is technically off-duty or on-duty." *Harris Cnty. v. Gibbons*, 150 S.W.3d 877, 882 (Tex. App. 2004, no pet.). Instead, "the dispositive question is: 'in what capacity was the officer acting at the time he committed the acts for which the complaint is made.'" *Kraidieh v. Nudelman*, 2016 WL 6277409, at \*5 (Tex. App. Oct. 27, 2016, no pet.) (mem. op.) (citing *Blackwell*, 909 S.W.2d at 139). "'If an officer is performing a public duty, such as the enforcement of general laws, he is acting in the course and scope of his employment as a police officer even if the [private] employer directed him to perform the duty.'" *Id.* (brackets in original) (citing *Gibbons*, 150 S.W.3d at 882). If, however, "there is no immediate crime and the off-duty officer is protecting a private employer's property or otherwise enforcing a private employer's rules or regulations, the trier of fact determines whether the officer was acting as a public officer or as a servant

of the employer." *Gibbons*, 150 S.W.3d at 882 (citing *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship*, 37 S.W.3d 145, 150 (Tex. App. 2001, no pet.)). In addition, "[a]n employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." Restatement (Third) of Agency § 7.07(2) (2006), *quoted by Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014).

2

Jarvis maintains that Davidson admits in his amended complaint that Jarvis acted in his capacity as a Dallas police officer during the incident in question. He is correct that the amended complaint alleges in places that Jarvis was acting within the scope of his job as a police officer. But all of Davidson's statements regarding scope are alleged as alternative theories of liability for the same set of facts. *See, e.g.*, Am. Compl. ¶5 ("[Jarvis] was, at all times material to this suit, either employed as an officer by the [DPD] . . . *and/or* as a security guard by AT&T landlord *and/or* for AT&T and other tenants.") (emphasis added); *id.* at ¶12 ("[I]n committing said acts and/or omissions, Defendant Jarvis was acting under his authority as a non-employee agent of AT&T *and/or* under color of state law as an employee of DPD.") (emphasis added); *id.* at ¶16 ("[E]ach Defendant was the agent and/or employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law."); *id.* at ¶28 ("The claims brought by Davidson under this section only apply to Defendants AT&T and Jarvis in his individual

capacity."). Certainly, Davidson is barred from recovering damages under mutually exclusive theories. *See Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 952-53 (5th Cir. 1994). But Rule 8 allows Davidson to plead alternative theories of liability, even if they are mutually exclusive and inconsistent. *See* Rule 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *see also Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003). Therefore, the court declines to take these alternative allegations as judicial admissions that Jarvis' conduct fell within the scope of his employment as a police officer.

Jarvis does not otherwise point to facts alleged in the amended complaint that would allow the court to determine as a matter of law that Jarvis' conduct was fully within the scope of his employment as a police officer. Nor is this plainly evident from the amended complaint. Indeed, under the facts alleged, the confrontation between Davidson and Jarvis was unprovoked and was not preceded by any apparent crime that, as a matter of law, would have shifted Jarvis' capacity to that of a police officer. *Cf., e.g., Kraidieh*, 2016 WL 6277409, at *5-6 (finding that upon observing public intoxication, defendant off-duty officer's actions were taken to preserve the peace); *Gibbons*, 150 S.W.3d at 883 (holding that off-duty officer was preserving the peace when investigating possible stolen vehicle); *Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 344-45 (Tex. App. 2003, no pet.) (holding that enforcing parking violation was within scope of police officer duties). At this point, and based on the amended complaint alone, Jarvis has failed to carry his burden to

show that Davidson's claims are based on conduct within the general scope of Davidson's employment with the City.[5]  Accordingly, the court denies Jarvis' motion to dismiss.[6]

## V

The court now turns to Davidson's claims against AT&T.

### A

AT&T maintains that all of Davidson's claims must be dismissed for failure to state a claim.  Davidson asserts his false arrest and false imprisonment, intentional infliction of emotional distress, and assault and battery claims against AT&T under an agency theory. AT&T contends that Davidson has failed to allege facts that demonstrate the required agency relationship between AT&T and Jarvis; and that, even if there were an agency relationship, Davidson has not adequately alleged facts that support the premise that Officer Jarvis acted with actual or apparent authority.  Separately, AT&T posits that Davidson has failed to state a claim for intentional infliction of emotional distress under Texas law; that Davidson has failed to state a claim for negligence because AT&T owed no legal duty to Davidson with respect to Jarvis' actions; and that Davidson's claims for punitive damages and attorney's

---

[5]In most of the cited cases where scope of governmental employment is disputed, the defendant seeks dismissal under § 101.106(f) after further facts have been developed.  *See, e.g.*, *City of Balch Springs v. Austin*, 315 S.W.3d 219, 226 (Tex. App. 2010, no pet.) (citing officer's trial testimony); *Kraidieh*, 2016 WL 6277409, at *2 (citing factual record); *Gibbons*, 150 S.W.3d at 883 (citing trial record).

[6]Because Jarvis has failed to demonstrate that the conduct in question fell within the scope of his employment by the City as a police officer, the court need not address the other prong of the § 101.106(f) inquiry.

fees are improper.

B

The court first examines whether Davidson has alleged facts that demonstrate an agency relationship between AT&T and Jarvis.

1

"Under Texas law, [a]gency is the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control." *Akerblom v. Ezra Holdings Ltd.*, 848 F.Supp.2d 673, 690 (S.D. Tex. 2012) (alteration in original) (citations omitted), *aff'd*, 509 Fed. Appx. 340 (5th Cir. 2013), *abrogated on other grounds by Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.,* 818 F.3d 193, 201 (5th Cir. 2016). As a general proposition, Texas law does not presume agency, and, when claiming agency, the alleging party has the burden of proving its existence. *Buchoz v. Klein*, 184 S.W.2d 271, 286 (1944). A principal is liable for the acts of its agent when "the agent has actual or apparent authority to do those acts or when the principal ratifies those acts." *Spring Garden 79U, Inc. v. Stewart Title Co.*, 874 S.W.2d 945, 948 (Tex. App. 1994, no writ) (citations omitted). Actual authority arises when the principal intentionally confers authority upon an agent, or intentionally allows the agent to believe he has authority, or by want of due care allows the agent to believe himself to possess authority. *Id.* Apparent authority arises when a principal's conduct would lead a reasonably prudent person to believe that the agent possessed the authority to act on behalf of the principal. *See*

*Maccabees Mut. Life Ins. Co. v. McNiel*, 836 S.W.2d 229, 232-33 (Tex. App. 1992, no writ).

2

The court holds that Davidson has failed to plead facts that would allow the court to reasonably infer that Jarvis was AT&T's agent during the time in question. Davidson acknowledges that Jarvis was not AT&T's employee. Instead, Davidson alleges that Jarvis was an employee of the mall's landlord, and makes conclusory allegations about Jarvis' capacity as a AT&T's "non-employee agent." *See, e.g.*, Am. Compl. ¶5 ("[E]ach of the acts complained of herein arise from the conduct of Defendant Jarvis while acting within the scope of his . . . agency of AT&T."); *id.* at ¶12 ("Jarvis was acting under his authority as a non-employee agent of AT&T . . ."); *id.* at ¶39 ("Jarvis was acting within the course as scope of his agency with and/or pursuant to the direction of AT&T . . ."). These "labels and conclusions" do not meet Rule 8's standards for pleading a plausible claim of relief. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also Shanghai Hailian Elec. Tools Co. v. Home Depot U.S.A., Inc.*, 2017 WL 4005139, at *3-4 (N.D. Tex. Sept. 12, 2017) (Fitzwater, J.).

Nor does the amended complaint's limited factual content suffice to plead an agency relationship between AT&T and Jarvis. Davidson alleges that Jarvis approached him in the AT&T store following his failed phone purchase and yelled at him to leave. Davidson asserts that Jarvis then pushed Davidson out of the store, struck him multiple times, and proceeded to arrest him. He does not allege that an AT&T employee at any time requested

- 22 -

or instructed Jarvis to perform any of these actions. Even Davidson acknowledges in the amended complaint that "no one had previously requested that he leave." Am. Compl. ¶8. These facts do not enable the court to draw the reasonable inference that AT&T had any control over Jarvis's tasks as a security officer. While it is conceivable that Jarvis was working as AT&T's agent, Davidson has not shown that Jarvis was plausibly working as anything other than an as a security officer for the mall's landlord.

The court therefore holds that Davidson has failed to plausibly plead an agency relationship between AT&T and Jarvis. Because all of the intentional tort claims that Davidson brings against AT&T are grounded in Jarvis' conduct, the court dismisses Davidson's claims against AT&T for false arrest and false imprisonment, intentional infliction of emotional distress, and assault and battery.

## C

The court now turns to Davidson's remaining negligence claim and his requests for attorney's fees and punitive damages against AT&T.

Following AT&T's motion to dismiss, Davidson responded that he was not asserting negligence, attorney's fees, or punitive damages claims against AT&T, notwithstanding the claims of his amended complaint. P. Resp. 2-3 ("Plaintiff is not—at this time and without specifically pleading such claims against AT&T prior to the deadline for amendment of the pleadings—requesting such application as to Defendant AT&T."). Davidson has not since amended his complaint or otherwise responded to AT&T arguments for dismissal of these

claims.  Accordingly, the court deems the negligence, attorney's fees, and punitive damages claims abandoned and dismisses them without prejudice.

## VI

Although the court is dismissing Davidson's claims against AT&T and the City, it will permit him to replead.  *See, e.g.*, *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal).  It does not appear that Davidson cannot, or is unwilling to, cure the pleading defects the court has identified.  Therefore, the court grants him 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

\*   \*   \*

For the reasons explained, the court grants AT&T's and the City's motions to dismiss, and denies Jarvis' motion to dismiss, and it grants Davidson leave to replead.

**SO ORDERED**.

March 21, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE