IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THOMAS LANDELL DAVIDSON, §
§
Plaintiff, §
§
VS. § Civil Action No. 3:17-CV-0006-D
§
AT&T MOBILITY, LLC; §
CITY OF DALLAS, TEXAS; and §
ALAN JARVIS, Individually, §
§
Defendants. §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Thomas Landell Davidson ("Davidson") asserting claims under 42 U.S.C. § 1983 and Texas tort law, the remaining defendant—Alan Jarvis ("Jarvis")—moves for summary judgment as to all claims against him. The principal questions presented are whether Jarvis is entitled to qualified immunity for his use of non-deadly force against Davidson and for his decision to detain and arrest Davidson, and whether the Texas Tort Claims Act ("TTCA") bars Davidson's state-law tort claims against Jarvis. For the reasons that follow, the court grants Jarvis' motion and dismisses this case with prejudice.

I

The present case is the subject of two starkly-contrasting narratives. The court will present both narratives here, although, for the purposes of its analysis below, the court will view the evidence in the light most favorable to Davidson as the summary judgment

nonmovant and will draw all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).[1]

Davidson asserts that Jarvis assaulted and unlawfully arrested him on January 4, 2015. On that date, Davidson—a Florida resident—visited an AT&T Mobility, LLC ("AT&T") store in Dallas and attempted to purchase three cell phones with cash. The store manager refused to allow him to buy any number of phones with cash, insisting instead that Davidson use a major credit card. According to Davidson, the manager at no point asked him to leave, nor did the manager ask Jarvis to remove him from the store premises.

At this point, Jarvis appeared. Jarvis was an off-duty City of Dallas ("City") police officer who was working as a security officer for the store's landlord. According to Davidson, without provocation, Jarvis yelled at him to "get the hell out" of the store; Davidson agreed to leave and began making his way to the door, while Jarvis continued to yell and curse at him; and Jarvis opened the exit door for Davidson, pushed him outside the store,[2] and then attempted to punch him. Davidson maintains that he managed to block the

---

[1] Jarvis makes a number of objections to Davidson's summary judgment evidence. The court overrules those objections as moot because, even assuming that all of Davidson's evidence is admissible, Jarvis is still entitled to summary judgment. *See, e.g., Dall. Police Ass'n v. City of Dallas*, 2004 WL 2331610, at *1 n.4 (N.D. Tex. Oct. 15, 2004) (Fitzwater, J.) (following similar approach).

[2] A video that Davidson submits as summary judgment evidence (*see* discussion *infra*) shows that the store opened to an exterior sidewalk that separated the store from parked cars.

initial punch, but Jarvis continued to attack him, throwing multiple punches and trying to throw Davidson to the ground. Davidson avers that he never tried to strike Jarvis during this altercation. Eventually, with the assistance of two bystanders, Jarvis managed to bring Davidson to the ground. Jarvis then put Davidson in a choke hold, which cut off Davidson's breathing. Fearing for his life, Davidson broke loose, stood up, and began walking—not running—away; Jarvis reacted by tasing him several times, causing him to fall back to the ground. Jarvis then straddled Davidson, placed his taser directly against Davidson's head, and tased him for roughly two minutes. Some on-duty police officers arrived, and Davidson was arrested for criminal trespass and assault on a public servant—crimes that Davidson contends he did not commit. Jarvis refused medical care, whereas Davidson suffered injuries that required medical attention. The criminal charges against Davidson were eventually dismissed.

Jarvis recounts a different version of the events in question. According to Jarvis, on January 4 he was working inside the AT&T store providing security on behalf of the store's landlord. At the time, he was clearly identifiable as a police officer because he was wearing his police uniform, badge, and safety equipment. The store's manager came to him saying that Davidson had been asked to leave several times, but had so far refused. Jarvis approached Davidson and instructed him to leave the store. Davidson stood up but did not immediately move toward the exit, so Jarvis placed a hand on Davidson's arm to physically

The storefront had glass doors abutted by floor-to-ceiling glass walls (at least for the parts of the storefront that can be seen on the video).

escort him out. Davidson slapped Jarvis' hand away, swore at him, and said that he was leaving. Davidson then began making his way toward the door. He stopped just before reaching the doorway, so Jarvis once again took hold of Davidson's arm. Davidson pulled away and, once again, swore at Jarvis and said that he was leaving.

Jarvis opened the front door for Davidson and gestured for him to leave, but Davidson stopped just inside the doorway and continued to yell. Jarvis then used his left hand to guide Davidson out of the store; Davidson responded by punching Jarvis in the face. Jarvis tried to throw Davidson off balance using an "arm bar take down," Aff. Jarvis 2, but was unsuccessful. Davidson then pulled Jarvis out of the store and pushed him up against the window, causing Jarvis to fall to the sidewalk and hit his head. Davidson pinned Jarvis down until some unknown bystanders pulled him off, and then Davidson attempted to escape. He did not get far—Jarvis used a "body displacement maneuver" to bring Davidson to his knees, and then tried to tase him. *Id.* at 3. This first attempt to tase Davidson failed because only one of the two taser leads made contact. Davidson tried to escape again, and again Jarvis brought him down with a body displacement maneuver. Jarvis attempted to pin Davidson down and tase him, but Davidson was able to get up. While Jarvis was on his knees, Davidson circled Jarvis and charged him, trying to take Jarvis' taser away. When Jarvis stood up, Davidson fled once again. Jarvis brought Davidson down for the third time with a body displacement maneuver, and used his taser on Davidson's lower back until Davidson stopped resisting. Other police officers then arrived and placed Davidson in handcuffs. As a result of the encounter, Jarvis suffered a broken nose, a black eye, multiple bruises and

lacerations, and a concussion.

Davidson has submitted a video of the altercation comprised of 18 seconds of sequential still photos taken by in-store security cameras.[3] The video sheds some light on what happened, but it is not dispositive. In it, Jarvis and Davidson can be seen walking to the store's front double-glass doors as two customers enter the store. Jarvis is then seen opening the right-hand door for Davidson and pointing for him to leave. As Davidson walks toward the door, he stops just short of it, and, after raising both of his hands about chest high, places himself in very close proximity to Jarvis, who is standing adjacent to the doorway. Davidson then cocks his head back, as if to say something to Jarvis, and moves in closer to him. In apparent response, Jarvis pushes Davidson through the doorway. Davidson resists the push and turns rapidly to face Jarvis. What happens next is unclear due to the quality of the video and the contrast between the exterior and interior lighting. It is not clear who throws the first punch. But a scuffle ensues that spills out of the store; Davidson

---

[3]As Davidson points out, video evidence has a special status at the summary judgment stage.

> [W]e assign greater weight, even at the summary judgment
> stage, to the facts evident from video recordings taken at the
> scene. When one party's description of the facts is discredited
> by the record, we need not take his word for it but should view
> the facts in the light depicted by the videotape.

*Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (internal quotation marks and citations omitted) (first quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011), then quoting *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)). Jarvis makes an objection to Davidson's video, but because the court is relying in part on the video to grant summary judgment in Jarvis' favor, it overrules his objection.

gets the upper hand and pushes Jarvis against an exterior wall. A bystander can be seen rushing from the parking lot toward the altercation just before the video ends. For purposes of this motion, the court will assume *arguendo* that the events of January 4 occurred as they did in the video, and will resolve any remaining factual questions—such as who threw the first punch, and what happened after Davidson's video ends—in Davidson's favor. *See Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012); *Owens*, 541 F.Supp.2d at 870 n.1.

Davidson filed the present lawsuit against Jarvis, AT&T, and the City. Only Jarvis remains as a defendant.[4] Davidson brings a claim against Jarvis under § 1983, contending that Jarvis detained him without reasonable suspicion, arrested him without probable cause, and used excessive force against him, all in violation of his Fourth Amendment rights. Davidson also alleges that Jarvis committed the Texas common-law torts of false arrest and false imprisonment, intentional infliction of emotional distress, and assault and battery. He seeks compensatory damages, punitive damages, and attorney's fees.

Jarvis moves for summary judgment. He contends that Davidson lacks any evidence to support his § 1983 claims, that Davidson cannot overcome the defense of qualified immunity, and that Davidson's Texas-law claims are barred by Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) (West 2011). Davidson opposes the motion and offers evidence in support of his claims. Jarvis, in turn, objects to Davidson's evidence. The motion is now ripe for

---

[4]The court granted AT&T's motion to dismiss all claims against it with prejudice. *See Davidson v. AT&T Mobility, LLC*, 2018 WL 4075722, at *1 (N.D. Tex. Aug. 27, 2018) (Fitzwater, J.). Davidson, Jarvis, and the City later stipulated to the dismissal, with prejudice, of all claims brought by or against the City in this action.

decision.

## II

When a summary judgment movant will not have the burden of proof on a claim at trial, he can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once he does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

When qualified immunity has been raised, "[t]he moving party is not required to meet [his] summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted). Rather, the movant need only plead his good-faith entitlement to qualified immunity, whereupon "the burden shifts to the plaintiff to rebut it." *Id.* (internal quotation marks, citation, and emphasis omitted); *see also Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that when government official pleads qualified immunity, plaintiff

must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct").  Once qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).[5]

### III

The court considers first whether Davidson has overcome Jarvis' defense of qualified immunity as to Davidson's federal-law claims brought under § 1983.

### A

Qualified immunity jurisprudence is well settled.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity applies to state officials sued for constitutional violations under § 1983.  *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999).  "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'"  *Thompson v. Mercer*, 762 F.3d 433,

_____

[5]In his response brief, Davidson fails to acknowledge the burden-shifting effect of qualified immunity.  Because Jarvis has asserted in his summary judgment motion his entitlement to qualified immunity, the burden has shifted to Davidson to demonstrate that Jarvis is *not* entitled to qualified immunity.  *See, e.g., McClendon*, 305 F.3d at 323.

437 (5th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)) (some internal quotes omitted).

"To decide whether defendant[] [is] entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiff[] as the part[y] asserting the injuries, the facts [he has] alleged show that defendant['s] conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.")).[6] "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* Finally, "[e]ven if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) (citing *Hare v. City of*

---

[6]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation. *Id.* The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 242.

*Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (en banc)). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001)).

Clearly established rights must not be defined at a high level of generality. *See Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004). "For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause . . . violates a clearly established right." *Anderson*, 483 U.S. at 639. But because defining clearly established rights so broadly would "destroy" the balance struck by the qualified immunity doctrine, rights must instead be defined in a "more particularized" sense. *Id.* at 639-40. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that *his conduct* was unlawful *in the situation he confronted*." *Brosseau*, 543 U.S. at 199 (emphasis added) (quoting *Saucier*, 533 U.S. at 202). Although this does "not require a case directly on point," it does require the plaintiff to show that "the violative nature of the *particular* conduct is clearly established." *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Ashcroft*, 563 U.S. at 741-42). "Such specificity is

especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, [such as] excessive force, will apply to the factual situation the officer confronts.'" *Id.* (second alteration in original) (quoting *Saucier*, 533 U.S. at 205). In essence, the plaintiff must "identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment." *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 552 (2017) (per curiam).

B

Regardless whether Jarvis had probable cause to arrest Davidson, or reasonable suspicion to detain him, Davidson has not shown that Jarvis' detaining and arresting him was objectively unreasonable in light of clearly established law.[7]

> "The right to be free from arrest without probable cause is a clearly established constitutional right." To overcome the qualified-immunity defense, the plaintiff[] must show [the defendant] did not have probable cause to arrest [him]. Probable cause exists when a police officer "had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." An officer is entitled to qualified immunity even if she "reasonably but mistakenly conclude[d] that probable cause [was] present."

*Lock v. Torres*, 694 Fed. Appx. 960, 964 (5th Cir. 2017) (fourth and fifth alterations in original; citations omitted) (quoting *Mangieri v. Clifton*, 29 F.3d 1012, 1016-17 (5th Cir.

---

[7]The court will assume *arguendo* that Jarvis was the arresting officer, or that his actions otherwise constituted a detention or an arrest for Fourth Amendment purposes.

1994)).[8]

From the moment Jarvis first approached Davidson, a reasonable officer in his position could have concluded that he had probable cause to arrest Davidson for the offense of criminal trespass. *See* Tex. Penal Code Ann. § 30.05 (West 2011). Under § 30.05(a)(2), a person commits an offense if he "remains on or in property of another . . . without effective consent" and "received notice to depart but failed to do so." An officer has probable cause to arrest a trespasser if someone on the scene tells the officer that the trespasser has refused to leave, and the officer hears the trespasser refuse to leave. *See Bodzin v. City of Dallas*, 768 F.2d 722, 724-25 (5th Cir. 1985).

Davidson does not dispute that an AT&T employee told Jarvis that Davidson was refusing to leave the store premises. Davidson does aver that "the manager of the store never asked . . . for Officer Jarvis' *assistance*." P. Interrog. Resp. Jarvis 4 (emphasis added). But this fact (even taken as true) does not create a fact issue concerning whether the manager specifically told Jarvis that Davidson was *refusing to leave*—regardless whether the manager did or did not request Jarvis' assistance. In fact, Davidson asserts in his response brief that Jarvis' actions were sparked by an "errant hearsay statement . . . made by an employee of AT&T." P. Resp. 13.

Moreover, Davidson cannot at this juncture dispute that *some* employee of AT&T

_____

[8]Because "'reasonable suspicion' is a less demanding standard than probable cause," *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000), the court's conclusion regarding probable cause forecloses Davidson's argument regarding reasonable suspicion.

asked for Jarvis' assistance. Davidson alleges in his second amended complaint that an AT&T employee "request[ed] that Defendant Jarvis . . . remove Plaintiff from the store." 2d Am. Compl. ¶ 12. "[A] party is bound by admissions made in his pleadings, such that he cannot present evidence contradicting those pleadings for the purpose of defeating a summary judgment motion." *Giddens v. Cmty. Educ. Ctrs., Inc.*, 540 Fed. Appx. 381, 391 (5th Cir. 2013) (per curiam) (citing *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107-08 (5th Cir. 1987)); *see also Peairs v. Jackson County*, 2015 WL 5666906, at *14 (S.D. Miss. Sept. 25, 2015). Unless Davidson can somehow explain away this inconsistency, he cannot create a fact issue by now asserting that Jarvis was acting totally unprompted.

On the foregoing facts, viewed favorably to Davidson, it would have been reasonable for Jarvis to conclude that he had probable cause to arrest Davidson. Even though Jarvis, unlike the defendants in *Bodzin*, never heard Davidson refuse to leave, this factual distinction is relatively minor; a reasonable officer could have relied on *Bodzin* in Jarvis' circumstances.

Davidson's interrogatory responses, read in the light most favorable to him, suggest that he did not actually commit the offense of criminal trespass because Jarvis was the first person to ask him to leave, and because he immediately attempted to comply with Jarvis' request. But he cites no case for the proposition that, when an officer is *incorrectly* told that a person is trespassing, the officer lacks probable cause to arrest, or reasonable suspicion to detain, that person. The probable cause inquiry focuses on the facts known to the officer at the time of the arrest. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992) ("A police officer has probable cause to arrest if, at the time of the arrest, he *had knowledge*

- 13 -

that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." (emphasis added)). Jarvis reasonably could have concluded that the facts known to him would warrant a prudent person's belief that Davidson had committed the offense of criminal trespass. *See Bodzin*, 768 F.2d at 724-25. Thus Davidson has not carried his burden of showing that Jarvis' actions were objectively unreasonable and that he is not entitled to qualified immunity on his claims for false detention and false arrest.[9]

C

The court now turns to Davidson's excessive force claim, which fails for two reasons. First, Davidson fails to cite any case law showing that Jarvis' *particular* actions violated Davidson's clearly established constitutional rights. Although Davidson correctly states the test for excessive force in the Fifth Circuit, and the factors to be considered,[10] simply reciting

---

[9]Even if no one told Jarvis that Davidson had refused to leave, both parties agree that Jarvis himself told Davidson to leave. A reasonable officer could consider Davidson's hesitation at the door to be a non-verbal refusal to comply with Jarvis' command—thus constituting, by itself, the offense of criminal trespass. *See Cano v. Vickery*, 2018 WL 4567169, at *4 (S.D. Tex. Sept. 24, 2018) (suggesting that uniformed off-duty police officer working security on private property has apparent authority to instruct someone to leave, for purposes of § 30.05); *Brown v. State*, 2009 WL 2340669, at *3 (Tex. App. July 31, 2009, no pet.) ("Section 30.05 of the Texas Penal Code does not require that the actor *verbally* express a refusal to leave the property after being instructed to do so." (emphasis added)); *Hernandez v. State*, 783 S.W.2d 764, 765 (Tex. App. 1990, no writ) ("[A] stay of any length of time after entry would satisfy the 'remain' requirement [of § 30.05].").

[10]
> To prevail on an excessive-force claim, [plaintiff] must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." . . . [T]he reasonableness of an officer's conduct depends on the "facts and circumstances of each particular case, including the severity of the crime at issue,

the general standard would not enable a reasonable trier of fact to find that Jarvis' actions violated a clearly established right. *Cf. Mullenix*, 136 S. Ct. at 308-09 (holding that general rule that police "may not 'use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others'" was not sufficiently specific right in qualified-immunity inquiry (quoting *Luna v. Mullenix*, 773 F.3d 712, 725 (5th Cir. 2014)). In a footnote in the procedural history section of his brief, Davidson also cites several cases for the proposition that, on January 4, 2015, "it was clearly established law that it was unreasonable and excessive for an officer to abruptly escalate an encounter via a physical takedown where even passive resistance was at hand." P. Resp. 2 n.1. But the cases Davidson cites would not have put a reasonable officer on notice that *Jarvis' particular actions* constituted an abrupt escalation of force. Davidson has "failed to identify a case where an officer acting under similar circumstances as [Jarvis] was held to have violated the Fourth Amendment." *White*, 137 S. Ct. at 552.

Preliminarily, although several of the cases Davidson cites were decided *after* 2015, when the incident in question occurred, *see Darden v. City of Fort Worth*, 880 F.3d 722 (5th Cir. 2018); *Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017); *Trammell v. Fruge*, 868 F.3d 332

---

whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citations omitted) (first quoting *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012), then quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

(5th Cir. 2017), the court will take them into account nonetheless because they reach conclusions about whether certain conduct violated clearly established law *prior* to 2015. In *Darden* the plaintiff "put his hands in the air when the officers entered the residence, complied with the officers' commands, and did not resist arrest. Yet [one defendant] allegedly threw [plaintiff] to the ground and twice shocked him with a Taser while he was being beaten by [another defendant]." *Darden*, 880 F.3d at 731. Here, the surveillance video indicates that Davidson did not completely comply with Jarvis' commands: he stopped before leaving the AT&T store, in very close proximity to Jarvis.[11] After Jarvis pushed[12] him out the door, Davidson rapidly turned toward Jarvis. In the moment, this act could have been perceived as a threat justifying the use of non-deadly force. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."). The court will not second-guess Jarvis' reactions "in the peace of a

---

[11]Even if Davidson *were* completely compliant, it would not necessarily end the analysis. The Fifth Circuit has "cautioned that 'we do not say that *any* application of force to a compliant [suspect] is *per se* unreasonable.'" *Escobar v. Montee*, 895 F.3d 387, 394-95 (5th Cir. 2018) (quoting *Cooper*, 844 F.3d at 524).

[12]Davidson cites no case suggesting that pushing a noncompliant trespassing suspect through a doorway constitutes excessive force. All of the cases he cites, as the discussion below shows, involve much higher levels of force than a simple one-handed push. *See, e.g., Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) ("[Defendant] should have known that he could not *forcefully slam* [plaintiff's] face *into a vehicle* while she was restrained and subdued." (emphasis added)).

judge's chambers." *Saucier*, 533 U.S. at 212 (quoting *Graham*, 490 U.S. at 396). After the first punch was thrown, Davidson clearly put up a fight: the video depicts Davidson grabbing Jarvis and pushing him against a wall. Thus Davidson posed much more of a threat than the purely passive plaintiff in *Darden*.

The next case, *Hanks*, held that, as of 2013,

> clearly established law demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation.

*Hanks*, 853 F.3d at 747 (citing cases). But a reasonable officer could have concluded that these were not the circumstances on January 4, 2015. The plaintiff in *Hanks* was facing away from the defendant with his hands behind his back when the defendant allegedly struck him. *See id.* at 746. Davidson was not. The video indicates that Davidson was turning quickly to face Jarvis—in very close proximity to him—when Jarvis acted. The facts of the present case therefore differ materially from those in *Hanks*.

The third case, *Trammell*, is similarly inapposite. That case involved *multiple* police officers who aggressively took down, and subsequently continued to beat, a public-intoxication suspect who offered only passive resistance. *Trammell*, 868 F.3d at 336-38. While the present case involves a similarly minor crime—criminal trespass is a Class B misdemeanor, *see* Tex. Penal Code Ann. § 30.05(d)(1)—it is reasonable to conclude that an off-duty police officer working alone would need to be more vigilant for potential threats

than a group of police officers working together. And Davidson, unlike the *Trammell* plaintiff, *actively* resisted by pushing Jarvis into a wall after the first punch was thrown. The facts of the present case do not align with those of *Trammell*.

The remaining cases that Davidson cites likewise fail to show that Jarvis' particular conduct violated Davidson's clearly established rights. In *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008), the court concluded that an officer who injured the plaintiff by allegedly "pushing her head into the rear window of an automobile after she was arrested, handcuffed, and compliant" had employed excessive force. *Id.* at 495. Here, Davidson was not already arrested and restrained at the time Jarvis allegedly struck him; he was on his feet and posed a potential threat.

*Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013), held that an officer violates the Fourth Amendment when he tases a suspect who merely pulls his arm away from the officer's grasp, and when he continues to tase the suspect once the suspect is in handcuffs. *Id.* at 378-79. According to Davidson's narrative, Jarvis did not tase him until he broke free from Jarvis' chokehold and began to walk away. Davidson's action could have been interpreted as fleeing under the *Graham* factors. And Jarvis did not tase Davidson after putting him in handcuffs.

Finally, in *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000), the court held that no reasonable officer could have concluded that the defendants had reasonable suspicion to detain the plaintiff. *See id.* at 740. This conclusion weighed heavily in the court's decision to deny qualified immunity as to the plaintiff's excessive force claim. *See*

*id.* Here, in contrast, Jarvis had probable cause to believe Davidson was committing a crime. This affects the "severity of the crime at issue" factor under *Graham. See Trammell*, 868 F.3d at 343. And, again, while the plaintiff in *Goodson* posed no apparent threat, the same cannot be said of Davidson. *Goodson* therefore did not clearly establish the law governing Jarvis' conduct. *Bush*, *Ramirez*, and *Goodson* are therefore inapposite.

Because Davidson fails to cite any case law showing that Jarvis' specific conduct was unlawful, he has not met his burden to overcome qualified immunity. *See Perniciaro v. Lea*, 901 F.3d 241, 256 (5th Cir. 2018) ("[Plaintiff] has not cited a single case—either in his briefing before the district court or before us—clearly establishing that the particular conduct at issue here violates [federal law]. Thus he has failed to address the dispositive question[.]"). Jarvis is therefore entitled to qualified immunity on Davidson's excessive force claim.

Putting aside the question of qualified immunity, Davidson also fails to meet his evidentiary burden as the summary judgment nonmovant. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). Here, Davidson cites the factors to be considered in evaluating whether a given use of force was excessive, and then conclusorily asserts:

> In this case, when one reviews such factors, it is apparent that such factors weigh in favor of Plaintiff and hence, given that a reasonable jury could find the use of force at hand to be excessive and Davidson has presented sufficient evidence to create a factual dispute, Defendant's *Motion* on such point should be denied.

P. Resp. 15. Notably absent from Davidson's argument is any explanation of *why* the evidence he submits creates a genuine issue of material fact under the relevant standard. This court need not "provide Davidson with arguments that he neglects to generate." D. Reply 16 (citing *Williams v. Valenti*, 432 Fed. Appx. 298, 303 (5th Cir. 2011) (per curiam)).

IV

The court next considers whether Jarvis is entitled to summary judgment on Davidson's state-law claims.

A

Jarvis moves to dismiss the state-law tort claims against him under § 101.106(f) of the TTCA. Section 101.106(f) provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). Although § 101.106(f) is a state statute, it can be raised in federal court as a defense to alleged violations of Texas tort law. *See, e.g.,*

*Wilkerson v. Univ. of N. Tex.*, 878 F.3d 147, 158-62 (5th Cir. 2017). To obtain a dismissal under § 101.106(f), a defendant must show that the plaintiff's suit "(1) was based on conduct within the general scope of the defendant's employment with a governmental unit and (2) could have been brought against the government unit under the [Texas] Tort Claims Act." *Anderson v. Bessman*, 365 S.W.3d 119, 124 (Tex. App. 2011, no pet.); *see also Zahn v. Solano*, 2012 WL 13027085, at *1 (N.D. Tex. May 29, 2012) (Means, J.); *Kelemen v. Elliott*, 260 S.W.3d 518, 524 (Tex. App. 2008, no pet.). The first prong of the test involves two inquiries: "whether the individual defendant was an employee of a governmental unit and whether the acts alleged fall within the scope of that employment at the relevant time." *Anderson*, 365 S.W.3d at 124 (citing *Poland v. Willerson*, 2008 WL 660334, at *4 (Tex. App. Mar. 13, 2008, pet. denied) (mem. op.); *Turner v. Zellers*, 232 S.W.3d 414, 417 (Tex. App. 2007, no pet.)). As to the second prong, "[a]ll common-law tort theories alleged against a governmental unit are assumed to be 'under the Tort Claims Act' for purposes of section 101.106." *Wilkerson*, 878 F.3d at 161 (quoting *Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011)). Thus a suit "could have been brought under [the TTCA] against the governmental unit" even if the TTCA does not waive sovereign immunity for the suit in question. *See Franka*, 332 S.W.3d at 369.

B

Jarvis previously moved under Fed. R. Civ. P. 12(b)(6) to dismiss the Texas-law claims against him under § 101.106(f). The court denied the motion because, "based on the amended complaint alone, Jarvis . . . failed to carry his burden to show that Davidson's

claims are based on conduct within the general scope of [Jarvis'] employment with the City." *Davidson v. AT&T Mobility, LLC*, 2018 WL 1407283, at *9 (N.D. Tex. Mar. 21, 2018) (Fitzwater, J.). Now, based on the summary judgment record, the court concludes that a reasonable trier of fact could only find that Jarvis *was* acting within the scope of his employment as a City police officer.[13]

The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by a competent authority." Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5). Texas peace officers retain "their status as peace officers twenty-four hours a day." *Blackwell v. Harris County*, 909 S.W.2d 135, 139 (Tex. App. 1995, writ denied). As a result, the "scope of employment is not determined simply on the basis of whether an officer is technically off-duty or on-duty." *Harris County v. Gibbons*, 150 S.W.3d 877, 882 (Tex. App. 2004, no pet.). Instead, "the dispositive question is: 'in what capacity was the officer acting at the time he committed the acts for which the complaint is made.'" *Kraidieh v. Nudelman*, 2016 WL 6277409, at *5 (Tex. App. Oct. 27, 2016, no pet.) (mem. op.) (citing *Blackwell*, 909 S.W.2d at 139). "If an officer is performing a public duty, such as the enforcement of general laws, he is acting in the course and scope of his employment as a police officer even if the [private] employer directed him to perform

---

[13]It appears to be undisputed that Jarvis was employed as a City police officer at the time of the incident. *See Davidson*, 2018 WL 1407283, at *8 ("Davidson admits that Jarvis was an employee of a government unit during the alleged offense."). The more contentious question is whether Jarvis' actions were in the scope of his duties as a police officer.

the duty." *Id.* (brackets in original) (citing *Gibbons*, 150 S.W.3d at 882). If, however, "there is no immediate crime and the off-duty officer is protecting a private employer's property or otherwise enforcing a private employer's rules or regulations, the trier of fact determines whether the officer was acting as a public officer or as a servant of the employer." *Gibbons*, 150 S.W.3d at 882 (citing *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship*, 37 S.W.3d 145, 150 (Tex. App. 2001, no pet.)). In addition, "[a]n employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." Restatement (Third) of Agency § 7.07(2) (2006), *quoted by Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014).

In his response to Jarvis' motion for summary judgment, Davidson makes the *ipse dixit* assertion that "there are genuine issues of material fact that need to be decided by a jury" regarding the capacity in which Jarvis was acting. P. Resp. 16. But Davidson does not identify any particular evidence that would create a genuine factual dispute on this point. *Cf. Ragas*, 136 F.3d at 458. Indeed, there appears to be no dispute. As noted above, Davidson acknowledges that an employee of AT&T told Jarvis that Davidson was refusing to leave the premises. This gave Jarvis probable cause to believe Davidson may have been committing a crime: criminal trespass. *See Bodzin*, 768 F.2d at 724-25. Because Jarvis was enforcing the general laws at the time he committed his alleged torts against Davidson, he was acting within the scope of his employment as a police officer. *See Kraidieh*, 2016 WL 6277409, at *5. A reasonable trier of fact could therefore only find that the first prong of § 101.106(f)

is satisfied.[14]

C

Turning to the second prong, the court concludes that Davidson's state-law claims for false arrest and false imprisonment, intentional infliction of emotional distress, and assault and battery could have been brought against the City under the TTCA because they are common-law tort theories. *See Wilkerson*, 878 F.3d at 161. Davidson reasserts, by reference, the arguments he made in his response to Jarvis' Rule 12(b)(6) motion that (1) § 101.106(f) does not apply to claims for intentional torts, and (2) if it does so apply, it is invalidated by the open-courts provision of the Texas Constitution, *see* Tex. Const. art. 1, § 13. Both of these arguments are clearly foreclosed by Texas law.

The Texas courts of appeals have repeatedly and expressly held that claims for intentional torts "could have been brought . . . against the governmental unit" for the purposes of § 101.106(f), even though the TTCA does not waive immunity for such claims.

---

[14]Were the court to conclude that Jarvis was acting in his capacity as a private security guard rather than as a public employee, it would have to grapple with the uncertain question whether an off-duty police officer acting outside the scope of his public employment can assert qualified immunity. *See Bracken v. Okura*, 869 F.3d 771, 777 & n.4 (9th Cir. 2017) ("Neither this court nor the Supreme Court has addressed the general availability of qualified immunity to off-duty police officers acting as private security guards. . . . We are also not aware of any case from other circuits squarely addressing the issue."); *see also Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001) ("Police officers, like other public officials acting *within the scope of their official duties*, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." (emphasis added)). The question whether a defendant can assert qualified immunity is different from the question whether the defendant acted under color of state law. *See, e.g., Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993) (holding that state-action requirement was satisfied under § 1983 even though defendant, a private person, could not assert qualified immunity).

- 24 -

*See, e.g., Zavala v. Bustos*, 2018 WL 3764568, at *3 (Tex. App. Aug. 9, 2018, no pet.);

*McFadden v. Olesky*, 517 S.W.3d 287, 298-99 (Tex. App. 2017, pet. denied); *City of Dallas*

*v. Groden*, 2016 WL 1367380, at *7 (Tex. App. Apr. 6, 2016, pet. denied); *Lopez v. Serna*,

414 S.W.3d 890, 895 (Tex. App. 2013, no pet.). The Supreme Court of Texas has impliedly

held the same. *See Alexander*, 435 S.W.3d at 792 (concluding that plaintiff's tort claims,

which included assault, false arrest, and false imprisonment, could have been brought under

TTCA for purposes of § 101.106(f), even though TTCA does not waive immunity for them).

These decisions leave little room for good-faith debate.

      Davidson's constitutional argument has similarly been foreclosed by the Texas courts.

In *Franka* the Supreme Court of Texas noted in *dicta*:

> [w]e recognize that the Open Courts provision of the Texas
> Constitution prohibits the Legislature from unreasonably
> abrogating well-established common-law claims, but restrictions
> on government employee liability have always been part of the
> tradeoff for the Act's waiver of immunity, expanding the
> government's own liability for its employees' conduct, and thus
> a reasonable exercise of the police power in the interest of the
> general welfare.

*Franka*, 332 S.W.3d at 385 (footnotes and internal quotation marks omitted). "Relying on

the Supreme Court's reasoning in *Franka*, many of [the Texas courts of appeals] have

addressed constitutional challenges to section 101.106(f) and have concluded that it does not

violate the open courts provision of the Texas Constitution." *McFadden*, 517 S.W.3d at 299

(citing *Groden*, 2016 WL 1367380, at *5-6 (collecting cases)). It seems clear that, were the

Supreme Court of Texas to consider the issue today, it would hold that the Texas

Constitution does not invalidate § 101.106(f) as applied to intentional torts.[15]

Because § 101.106(f) applies to Davidson's state-law tort claims against Jarvis, and because Davidson has not amended his pleadings to dismiss Jarvis and add the City as a defendant, the court dismisses Davidson's state-law claims with prejudice.[16]

*   *   *

For the foregoing reasons, the court grants Jarvis' motion for summary judgment and dismisses this action with prejudice by judgment filed today.

**SO ORDERED**.

February 7, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[15]Moreover, under Rule 5.1(a)(2), a party challenging the constitutionality of a state statute must serve a copy of the paper challenging the statute on the attorney general of the relevant state. Davidson has provided no certification or other statement indicating that he has done so.

[16]Jarvis also moves for summary judgment to the extent Davidson attempts to state a claim for negligent infliction of emotional distress. It is not apparent from the second amended complaint that Davidson is attempting to plead such a claim. If he is, the court agrees that the claim should be dismissed because Texas does not recognize the tort of negligent infliction of emotional distress. *See Tolbert v. Otstott*, 2013 WL 3389041, at *2 (Tex. App. July 3, 2013, no pet.) (citing *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993)).